UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE | : | |
| VITO ANTHONY LAFATA | : | CHAPTER 13 |
| | : | CASE NO.04-44511-JBR |
| DEBTOR | : | |

**MEMORANDUM OF DECISION ON (i) DEBTOR'S MOTION FOR DETERMINATION OF SECURED STATUS; (ii) DEBTOR'S OBJECTION TO CLAIM OF EASTERN SAVINGS BANK, FSB; AND (iii) OBJECTION OF EASTERN SAVINGS BANK, FSB TO CONFIRMATION OF CHAPTER 13 PLAN**

This matter came before the Court for hearing on (i) the Debtor's Motion for Determination of Secured Status [docket # 8] and Objection of Eastern Savings Bank, FSB [docket # 22]; (ii) the Debtor's Objection to the claim of Eastern Savings Bank, FSB [docket # 9] and Eastern Savings Bank, FSB's Response [docket # 17]; and (iii) the Objection of Eastern Savings Bank, FSB to Confirmation of Chapter 13 Plan [docket # 21] and the Debtor's Response [docket #33]. At issue is whether the Debtor may strip down the Bank's mortgage without running afoul of 11 U.S.C. § 1322(b)(2).

**BACKGROUND**

The Debtor owns three contiguous parcels of land located in Methuen, Massachusetts. One of those parcels, known as lots 768 to 770 (the "House Lot"), was owned by Gail Ness, formerly known as Gail Raulinaitis and formerly known as Gail Lafata, in her capacity as trustee for the Enfield Street Realty Trust. The House Lot has an address of 31 Enfield Street. By deed dated June 4, 2004 Ms. Ness deeded the

House Lot to the Debtor.[1]

In addition to the House Lot, the Debtor owns two other contiguous parcels, both of which are bounded on one side by the House Lot. Parcel No. 1 contains land known as lots 239 to 241 inclusive ("Parcel No. 1"); the other parcel is an approximately 500 square foot strip of land that contains part of what is known as lot 239 ("Parcel No. 2" and collectively with Parcel No. 1, the "Mortgaged Property"). The Mortgaged Property has an address of 26 Jasper Street. According to the Debtor, his legal address is 26 Jasper Street. Approximately eight (8) feet to ten (10) feet of the Debtor's residence is located on the Mortgaged Property. Most of the residence is located on the House Lot. Another small detached house is also located on the House Lot. It does not appear that any part of the second house encroaches onto the Mortgaged Property.

On July 24, 2003 the Debtor granted the Bank a mortgage on the Mortgaged Property to secured a note in the principal amount of $165,000. It is undisputed that the mortgage covers only the Mortgaged Property. Indeed the Debtor, the only signatory to the mortgage, did not own the House Lot at the time the mortgage was executed. The Debtor has represented that, at the time the mortgage was given, he rented out part of his house to a border and that the second house was rented as well.

On August 5, 2004 (the "Petition Date") the Debtor filed this bankruptcy. It is unclear whether he currently has, or on the Petition Date had, a border living with him in his residence or whether the second house is or was rented.

---

[1] The City of Methuen filed an Opposition to Debtor's Motion for Secured Status on the grounds that Ms. Ness as Trustee of the Enfield Street Realty Trust is the owner of the House Lot. The ownership changed in June 2004, however, and therefore the City's Opposition will be overruled.

2

According to an appraisal provided by the Debtor, the Mortgaged Property has a value of $18,500. According to the Bank, the Mortgaged Property and the House Lot together are worth in excess of $200,000. The Bank did not proffer an appraisal for the Mortgaged Property.

**POSITION OF THE PARTIES**

The Debtor seeks to bifurcate the Bank's claim into a secured claim in the amount of $18,500, the value of the Mortgaged Property, and an unsecured claim for the deficiency. The Debtor argues that 11 U.S.C. § 1322(b) does not prohibit the bifurcation for three reasons: first, his residence only encroaches on the Mortgaged Property and therefore the Bank does not have a mortgage on his primary residence; second, even if the Mortgaged Property was deemed to be his primary residence, his rental of a portion of the house to a roommate renders section 1322(b)(2) inapplicable; and third, the Bank cannot reform its mortgage without including the small house which renders section 1322(b)(2) inapplicable.

The Bank argues that it has a mortgage on the Debtor's principal residence by virtue of the encroachment; that the Debtor's rental to a border is not permitted by the City of Methuen; and that rental to a roommate, as a matter of policy, should be insufficient to overcome the strip down prohibition contained in section 1322(b)(2).

**DISCUSSION**

*Burden of Proof*

"A Debtor seeking reorganization under Chapters 11, 12 or 13 has the burden of establishing that the plan complies with the statutory requirements for confirmation....

3

However, a party objecting to confirmation bears the burden of proof as to the objection." *In re Petrella*, 230 B.R. 829, 832 (Bankr. N.D. Ohio 1999) (internal citations omitted). See also *In re Larios*, 259 B.R. 675, 678 (N.D.Ill. 2001).

"Although a properly executed and filed proof of claim is prima facie evidence of the validity and amount of the claim (Bankruptcy Rule 3001(f)), once the objecting party submits sufficient evidence to place the claimant's entitlement in issue, the ultimate burden of proof or persuasion is upon the creditor to establish its claim. See Russell, Bankruptcy Evidence Manual § 301.50 at page 419 (West 2000 edition); *In re Harrison*, 987 F.2d 677 (10th Cir.1993); *In re Tidewater Memorial Hospital, Inc.*, 106 B.R. 885 (Bankr.E.D.Va.1989)." *In re Brown*, 244 B.R. 603, 608 (Bankr. W.D.va. 2000). See also *In re Industrial Commercial Elec., Inc.*, 304 B.R. 24, 29 (Bankr. D. Mass. 2004) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000) (citations omitted). The burden of proof is "a 'substantive' aspect of a claim.... That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." *Id.* at 20-21, 120 S.Ct. at 1955 (citations omitted).") *Home Loan Mortgage Corp.*, 179 B.R. 492, 494 (E.D.La.1995) (same); *In re Hildebran*, 54 B.R. 585, 586 (Bankr.D.Or.1985) (same).

In the instant case, the Bank, as the party objecting to confirmation, must prove it is entitled to the protection it claims under section 1322(b)(2). The mortgage document

4

as well as the deed conveying the House Lot from Ms. Ness to the Debtor constitute sufficient evidence to call into doubt the Bank's proof of claim, in which it asserts a secured claim in the full amount of the note. Thus the ultimate burden to establish its claim has been shifted back to the Bank. The Court must now decide whether the Bank has met its burden.

*Modification of the Mortgage*

Section 1322(b)(2) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may--
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....

Under this section a mortgagee of the a debtor's primary residence, at least one whose claim is not entirely unsecured,[2] is protected from having its secured claim "stripped down" to the value of the collateral. From a debtor's perspective, a debtor cannot treat the mortgagee of his home in the same manner as all of his other undersecured creditors. "At first blush it seems somewhat strange that the Bankruptcy Code should provide less protection to an individual's interest in retaining possession of his or her home than of other assets. The anomaly is, however, explained by the legislative history indicating that favorable treatment of residential mortgagees was intended to

---

[2] *See In re Mann*, 249 B.R. 831, 835 (1st Cir. BAP 2000) (Chapter 13 plans may strip off wholly unsecured mortgages). *But see Fraize v. Beneficial Mortgage Corp. of N.H. (In re Fraize)*, 208 B.R. 311, 313 (Bankr.D.N.H.1997)(Strip off, as well as strip down, not permitted).

.

5

encourage the flow of capital into the home lending market." *Nobelman v. American Sav. Bank*, 508 U.S. 324, 332, 113 S.Ct. 2106, 2111-12, 124 L.Ed.2d 228 (1993) (Stevens, J., concurring). Congress' desire to keep money flowing into the residential mortgage market is advanced by simply leaving parties to a mortgage on a debtor's primary residence in essentially the same position they occupied outside of the bankruptcy arena.

> In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). Moreover, we have specifically recognized that "[t]he justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." *Butner, supra*, at 55, 99 S.Ct., at 918. The bank's "rights," therefore, are reflected in the relevant mortgage instruments....

*Id.* at 329, 113 S.Ct. at 2110.

Although courts are not uniform in deciding whether the time of the granting of the mortgage or the commencement of the bankruptcy governs the determination of what property is a debtor's primary residence,[3] the Bank cannot prevail under either

---

[3]*Compare In re Larios*, 259 B.R. at 678 ("To date, the Seventh Circuit has not ruled on which date [time mortgage given or commencement of the case] should be used to measure whether a secured creditor is entitled to the anti-modification protection of § 1322(b)(2).") *with In re Donahue*, 231 B.R. 865 (Bankr. D. Vt. 1998), rev'd on other grounds, 232 B.R. 610 (D.Vt. 1999) ("Determination as to when property securing creditor's claim is Chapter 13 debtor's primary residence, within meaning of anti-modification provision of Chapter 13, is made as of commencement of bankruptcy case.")

date. At the time the Debtor granted the mortgage to the Bank, he did not own the House Lot. Therefore he could not grant a mortgage in what he did not own. Prior to the Petition Date, he acquired the House Lot but the Bank took no action to reform the mortgage. Therefore the Bank had and continues to have a mortgage on the Mortgaged Property which is burdened with an encroachment. Assuming without deciding that the physical presence of a significant amount the residence on the Mortgaged Property would be sufficient to bring the Mortgaged Property within the rubric of a "primary residence," the Bank has failed to prove that an eight to ten foot encroachment is the main part, the principal part, or even an important part of the Debtor's residence. Indeed, from the pictures provided to the Court by the Debtor, it appears that the encroachment may only be an unenclosed deck. This is not a situation where a mortgagee has a lien on the primary residence that is comprised of two separately deeded parcels and the debtor is attempting to sell the unimproved lot. This is a case where the Bank did not take a mortgage on the improved lot. To hold that the Bank has a mortgage on the primary residence when admittedly it does not hold a mortgage on the House Lot is akin to the tail wagging the dog.

    Moreover, during the intervening months between when the Debtor acquired the House Lot and his filing for bankruptcy, the Bank failed to seek reformation of the mortgage in state court. The determination the Bank now seeks would give the effect of reformation without the Bank having sought the same through the usual process available in such instances. Because there has been no reformation of the mortgage, the Court need not reach any of the issues regarding the rental of the small house, including whether it was rented at the relevant time or times. Similarly because the

7

Court finds that the Bank did not have a mortgage on the Debtor's primary residence, it need not address what impact, if any, the Debtor's rental of part of his house to a border, has on section 1322(b)(2).

**CONCLUSION**

For the foregoing reasons, (i) the Debtor's Motion for Determination of Secured Status [docket # 8] is ALLOWED and Objection of Eastern Savings Bank, FSB [docket # 22] is OVERRULED; (ii) the Debtor's Objection to the claim of Eastern Savings Bank, FSB [docket # 9] is SUSTAINED and Eastern Savings Bank, FSB's Response [docket # 17] is OVERRULED; and (iii) the Objection of Eastern Savings Bank, FSB to Confirmation of Chapter 13 Plan [docket # 21] is OVERRULED and the Plan may be CONFIRMED.

Separate orders will issue.

Dated; December 8, 2004

*Joel B. Rosenthal*
Joel B. Rosenthal
United states Bankruptcy Judge